Case 4:24-cv-02459   Document 1-2   Filed on 06/28/24 in TXSD   Page 1 of 9

Harris County - County Civil Court at Law No. 4

4/1/2024 4:40 PM
Teneshia Hudspeth
County Clerk
Harris County

CAUSE NO. 1225333 _____

| | | |
|---|---|---|
| AN QUOC VO, | § | IN THE COUNTY CIVIL COURT |
| *Plaintiff*, | § | |
| | § | |
| vs. | § | AT LAW NO. ___ |
| | § | |
| THE LUBRIZOL CORPORATION, | § | |
| *Defendant*. | § | HARRIS COUNTY, TEXAS |

## PLAINTIFF'S ORIGINAL PETITION

TO THE HONORABLE JUDGE OF SAID COURT:

Plaintiff An Quoc Vo ("Plaintiff") files this Original Petition against Defendant The Lubrizol Corporation ("Lubrizol"), and respectfully shows unto the Court the following:

### I.
### DISCOVERY LEVEL

1. Pursuant to Rule 190 of Texas Rules of Civil Procedure, Plaintiff intends to conduct discovery under a Level 2 Discovery Control Plan as defined in Rule 190.3.

### II.
### RELIEF UNDER RULE 47 AND GOVERNMENT CODE
### CHAPTER 25, SECTION 25.003(c)(1)

2. Specifically Plaintiff is seeking relief as follows:

(1) Monetary relief of $250,000.00, excluding interest, exemplary damages, statutory or punitive damages and penalties, and attorney's fees and costs;

(2) Mental anguish to be decided by the trier of facts;

(3) Expert fees; and

(4) Judgment awarding all other reliefs to which the Court deems Plaintiff is entitled.

### III.
### PARTIES

3. Plaintiff AN QUOC VO is an individual residing in Harris County.

**EXHIBIT B**

Copy from re:SearchTX

4. Defendant THE LUBRIZOL CORPORATION (hereafter referred to as "Lubrizol") is a corporation doing business in the State of Texas in Harris County, Texas. It has a branch located at 41 Tidal Rd, Deer Park, Texas 77536. It may be served with process via its registered agent, C T CORPORATION SYSTEM, at 1999 Bryan St., Ste. 900, Dallas, Texas, 75201-3136, USA.

## IV.
## JURISDICTION

5. This Court has jurisdiction over this matter because the amount in controversy exceeds the minimum jurisdictional limits of this Court.

## V.
## VENUE

6. Venue is proper in Harris County, Texas, because Defendant conducts business in Harris County, Texas.

7. Venue is proper in Harris County, Texas, because Defendant's wrongful acts occurred in Texas.

## VI.
## RELEVANT FACTS

8. Plaintiff AN QUOC VO was initially a contractor and then later a permanent employee who began working for LUBRIZOL on June 1, 2014. Plaintiff became permanent on October 9, 2015. Around 2018, Plaintiff became a shift trainer and performed shift 3 takeover until now.

**A.     Workplace Incidents involving THOMAS VINCENT**

9. First, Plaintiff received inappropriate text messages, nude pictures and nude video clips from Thomas Vincent. Plaintiff was shocked, embarrassed, and disgusted. Like many victims, Plaintiff did not dare to report these incidents, because she was too embarrassed to speak out and felt fearful about risking her job and putting her position in jeopardy, as she was threatened by her supervisor. Plaintiff was born and raised in Vietnam and has very modest, conservative values.

Copy from re:SearchTX

Discussing matters of sex is not at all appropriate. Plaintiff repeatedly told Thomas Vincent to stop, and that she is already a married mother with two children.

10. Despite Plaintiff's demands for Thomas Vincent to stop, they were ignored; and Thomas Vincent continued sending Plaintiff inappropriate text messages and more obscene pictures and videos.

**B.     Workplace Incidents involving CASEY WILCOX**

11. Plaintiff and Casey Wilcox had been experiencing some conflicts at work over how to accomplish the best results. As a result, their communication became strained. While Plaintiff could interact comfortably with other coworkers, conversations with Casey Wilcox had been challenging. Casey Wilcox spoke rapidly and often teased the Plaintiff with racial slurs. Plaintiff had tried to minimize interactions with Casey Wilcox, limiting their conversations to necessary moments, such as during shift changes. Plaintiff's supervisor was aware of this situation, as he and Plaintiff had discussed work and personnel matters to improve shift dynamics, but again, was advised that she "needed to shut-up" and to suppress the evidence. Plaintiff had shared feelings about interacting with Casey Wilcox.

12. Plaintiff thought she could keep all these incidents to herself until she learned from another employee named Logan Lanford of rumors about Plaintiff that he heard when he first began working for Lubrizol. Casey Wilcox had spread false rumors to Logan Lanford and other coworkers that Plaintiff had killed someone back in Vietnam and that was the reason she left Vietnam and how she got the nickname "little killer" at the company. Logan Lanford did not know who Plaintiff was, and had not even met her at that time, but he believed the entire story was true.

13. Casey Wilcox's story about Plaintiff was completely untrue and caused embarrassing and disparaging rumors about Plaintiff to spread around the workplace. Casey Wilcox's strong words

implied that Plaintiff was a murderer. As a result, many people at the company began talking behind Plaintiff's back and thought the rumors were true facts, and not a joke.  As the Quality Assurance lab ("QA") plans to hire more staff, Plaintiff was afraid that these false rumors about her would restart again.

14.     Plaintiff talked to her supervisor, who urged Plaintiff to act like "nothing happened" and to "keep quiet." Plaintiff, like many other Asians in America, was concerned about anti-Asian racism that was surging due to the COVID-19 Pandemic. She were afraid that Casey Wilcox would find out if Plaintiff reported him to HR/Management and would retaliate. That fear made Plaintiff even more anxious, scared and depressed. In addition, Plaintiff also learned that Linh Pham, another female Asian employee at the company, was also experiencing problems and conflicts with Casey Wilcox, although the exact details were unclear. Because Plaintiff had always loved her job, and could no longer remain silent as her workplace became more and more hostile and miserable, she finally decided to stand up for herself.

15.     Plaintiff decided that she would talk with Joe Mock, the Quality Assurance ("QA") Lab Manager, and Brett Farmacka, the QA Operation Superintendent, about what happened. Plaintiff was deeply ashamed and embarrassed.  Plaintiff described how she finally told someone else what had happened: During her last two days of training classes with her English teacher, she could not even focus. She was crying and too scared to tell her teacher about the sexual harassment and other problems that happened to her at her workplace.  Her teacher advised her to seek therapy. Plaintiff later read an article in a <u>TIME</u> weekly magazine about anti-Asian racism, "We are not Silent," that urged public awareness to "recognize that we need help, we need protection, and we need people in power to stand up for us against hate."

Copy from re:SearchTX

### C. The Final Illegal Act

16. In late September, 2023, the final straw that broke the camel's back occurred when another co-worker Brian Beasley texted Plaintiff and said, "You are very sexy," and made numerous sexual comments.

17. Plaintiff reported this to Brenda Munn in HR on October 12, 2023.

18. HR told Plaintiff to "hush" and to suppress the evidence of the violations if "she wants to keep her job." Plaintiff was threatened with termination.

19. Plaintiff, in good faith, had sought help to ensure a good friendly environment to work in. Plaintiff loves her job and her family. Again, to cite the TIME magazine national news article, Plaintiff has asked for help from others with authority to "recognize that we need help, we need protection, and we need people in power to stand up for us."

## VII.
## PLAINTIFF'S CAUSES OF ACTION

### A. *SABINE PILOT* CLAIM

20. Plaintiff witnessed and experienced sexual harassment. However, when Plaintiff reported sexual harassment to HR, she was advised not to say anything. Plaintiff was illegally advised to suppress evidence, and to sign illegal documents. She was also threatened with termination. She also witnessed other workers and managers sexually harass other co-workers. This illegal act of HR and management in failing to follow procedures but instead to silence and threaten the victims was a violation of state law. Plaintiff refused to commit an illegal act by signing falsified documents to suppress evidence, affecting services or her pecuniary interest.

21. Plaintiff repeats, realleges, and reincorporates all prior paragraphs as if set forth fully herein.

22. Plaintiff has standing to bring this claim.

23. All conditions precedent to suit and to recovery have been performed.

24. In Texas, it is illegal for an employer to threaten an employee solely because she refused to commit a criminally illegal act (*i.e.,* suppressing evidence in this case) and to force her to sign documents affecting services. This exception to the at-will employee rule was set out by the Texas Supreme Court in *Sabine Pilot Svc., Inc. v. Hauck,* 687 S.W.2d 733 (Tex. 1985), and the cause of action for such a claim is referred to as a *Sabine Pilot* claim. That is the claim Plaintiff brings here.

25. Texas Penal Code Section 32.46(a)(l) makes it a crime if a person, with intent to defraud or harm any person, by deception "causes another to sign or execute any document affecting property or services or the pecuniary interest of any person .... " 43. 18 U.S.C. § 1343, the federal wire fraud statute, provides:

> Whoever, having devised or intending to devise any scheme or artifice to defraud, or for obtaining money or property by means of false or fraudulent pretenses, representations, or promises, transmits or causes to be transmitted by means of wire, radio, or television communication in interstate or foreign commerce, any writings, signs, signals, pictures, or sounds for the purpose of executing such scheme or artifice, shall be fined under this title or imprisoned not more than 20 years, or both. If the violation affects a financial institution, such person shall be fined not more than $1,000,000 or imprisoned not more than 30 years, or both.

26. Despite the managers deliberately taking no action to properly report the sexual harassment, and pressuring Plaintiff to keep quiet and to sign documents to suppress evidence, Plaintiff refused to engage or participate in criminal activity, including *inter alia,* Texas Penal Code Sections 32.46(a)(l), 18 U.S.C. § 1343 - thus giving rise to a valid *Sabine Pilot* claim for mental anguish, punitive damages, interest, and costs. *See, e.g., Lisanti v. Dixon,* 147 S.W.3d 638 (Tex. App.-Dallas 2004, pet. denied) (affirming jury verdict in favor of plaintiff in a *Sabine Pilot* case); *Ebasco Constructors, Inc. v. Rex,* 923 S.W.2d 694 (Tex.App.- Corpus Christi 1996, writ denied) (upholding jury verdict in employee's favor in a *Sabine Pilot* case).

27. Plaintiff normally earns approximately $150,000.00 per year.

Copy from re:SearchTX

28. As a result of the sexual harassment, and further being pressured to suppress the evidence under threat of termination, Plaintiff has suffered severe emotional distress, mental anguish, and suffered a miscarriage as a result.

29. As reflected by, *inter alia,* Defendant's illegal threat of termination was done with malice, spite, or reckless indifference, thus justifying the imposition of punitive damages.

30. Plaintiff demands a jury trial and tenders with the District Clerk of Harris County, Texas, the required jury fee.

31. In compliance with Texas Rule of Civil Procedure 47, Plaintiff states that she seeks monetary relief of $250,000.00 as actual damages and judgment for all the other relief to which she deems herself entitled. Plaintiff asks that the Court issue citation for Defendant to appear and answer, and that Plaintiff be awarded a judgment against Defendant for the following:

   a. Pecuniary losses, consequential damages, and incidental damages;
   b. Damages for emotional distress and mental anguish;
   c. Exemplary, or punitive, damages in the amount of $2,000,000.00;
   d. Pre-judgment and post-judgment interest;
   e. All Court costs;
   f. Attorney's fees of at least $250,000.00;
   g. Post-judgment interest on the unpaid balance of Court costs and Attorney's fees at the highest rate allowed by law pursuant to the provisions of the Note and Texas law; and
   h. All other reliefs to which Plaintiff is entitled.

**B.   COMMON LAW FRAUD**

32. To prevail on a common law fraud claim, a plaintiff must prove that (1) the defendant made a material misrepresentation and the representation was false; (2) the defendant knew the representation was false or made it recklessly as a positive assertion without any knowledge of its truth; (3) the defendant intended to induce the plaintiff to act upon the representation; and (4) the plaintiff actually and justifiably relied on the representation, which caused injury. *Ernst & Young,*

*L.L.P. v. Pac. Mut. Life Ins. Co.,* 51 S.W.3d 573, 577 (Tex. 2001); *Hartford Fire Ins. Co. v. C. Springs 300, Ltd.,* 287 S.W.3d 771, 781 (Tex. App.–Houston [1st Dist.] 2009, pet. denied).

## VIII.
## DAMAGES

33. As a result of Defendant's conduct detailed above, Plaintiff has incurred actual damages in the amount of $250,000.00.

## IX.
## EXEMPLARY DAMAGES

34. Plaintiff would show that Defendant committed *Sabine Pilot* violations and common law fraud and that Defendant, in committing such torts, was consciously indifferent to the interest of Plaintiff. Defendant was actually and subjectively aware of the extreme degree of risk and harm to Plaintiff's interests by their conduct yet proceeded with conscious indifference and reckless disregard toward the rights of Plaintiff. Accordingly, Plaintiff seeks an award for exemplary damages from Defendant in the amount of $2,000,000.00 as punishment for engaging in such conduct and as a deterrence to others.

## X.
## ATTORNEY'S FEES

35. In order to prosecute her claim against Defendant, Plaintiff has retained the undersigned attorneys and has agreed to pay their usual and customary fees. Plaintiff seeks all reasonable and necessary attorney's fees in the amount of $250,000.00 in this case, which include the following: (a) preparation and trial of this lawsuit; (b) post-trial, pre-trial legal services; (c) an appeal to the Court of Appeals; (d) making or responding to an application for writ of error to the Supreme Court of Texas; (e) an appeal to the Supreme Court of Texas in the event application for writ of error is granted; and (f) post-judgment discovery and collection in the event the execution on the judgment is necessary.

Copy from re:SearchTX

## XI.
## REQUEST FOR INITIAL DISCLOSURE

36. Pursuant to Texas Rule of Civil Procedure, Rule 194, Plaintiff requests initial disclosures from Defendant.

## XII.
## JURY DEMAND

37. Plaintiff requests a trial by jury of the matters herein and tenders the appropriate fee.

## XIII.
## PRAYER

38. For the reasons set forth above, Plaintiff respectfully requests that, upon trial on the merits, Plaintiff be granted judgment against Defendant for actual damages, special damages, and exemplary damages. Plaintiff requests pre-judgment and post-judgment interest at a rate allowed by the law until paid; reasonable and necessary attorney's fees in the amount of $250,000.00 and all the costs of court and expenses incurred by Plaintiff in the investigation and prosecution of this case; and any such further relief, at law or in equity, to which the Court deems Plaintiff to be justly entitled.

Respectfully submitted,

**THE TAMMY TRAN LAW FIRM**
By: */s/ Minh-Tam Tran*
MINH-TAM TRAN
Texas State Bar No. 20186400
ttran@tt-lawfirm.com
4900 Fournace Place, #418
Bellaire, Texas 77401
Tel: (713) 655-0737
Mobile: (832) 372-4403
**COUNSEL FOR PLAINTIFF**

Copy from re:SearchTX